# CIRCUIT COURT OF ALBEMARLE COUNTY

Nimrod T. Clark et al.

v.

Board of Supervisors
of Albemarle County

## Case No. 7005-C

April 9, 1990

## By JUDGE HERBERT A. PICKFORD

By their bill for declaratory judgment, plaintiffs seek to have declared null and void certain actions undertaken by the respondents in 1983 and 1988 with respect to the establishment of a police force for Albemarle County. Count One alleges that police force created in 1983 is a nullity because it was improperly created within the purview of the Code of Virginia. Count Two alleges the creation of a police force in 1988 and that it is a nullity because there was no referendum approving it. Respondents assert the bar of laches to the suit.

Bryson's *Handbook on Virginia Civil Procedure*, second edition (1989) at page 278, summarizes quite well the law in Virginia on the defense of laches as follows:

> For the defendant successfully to assert laches against the plaintiff, the following elements must be shown to the court. The plaintiff must have had knowledge of his rights. There must have been a great delay between the accrual

of the cause of action and the filing of the suit . . . . The delay must have been such as to warrant the assumption that the plaintiff has abandoned his claim. Furthermore, the defendant must have changed positions in reliance on the plaintiff's assumed abandonment, or the defendant must have been injured in some way by the plaintiff's delay in suing.

With regard to Count one of the plaintiff's bill, I find that the bar of laches is applicable. From the pleadings and evidence adduced, it is clear that the plaintiffs, unlike those in *Johnson v. Black*, 103 Va. 477 (1905), became aware of their claim in 1983, when the respondents acted to adopt § 10.1-1 of the county code. Their legal attack upon the validity of that ordinance, however, did not occur until the instant suit was filed April 17, 1989. This delay of six years warranted an assumption that the plaintiffs had abandoned any claim disputing the legality of the ordinance. That they pursued a legislative remedy rather than litigation is evidence supportive thereof. Lack of authority to enact the ordinance or a defect in its enactment process are issues the plaintiffs could have asserted in 1983 or within a reasonable time thereafter. They are readily available to any prospective litigant who is aggrieved by a legislative act when he becomes aware of the act. Asserting those alleged deficiencies in 1989 is an unreasonable delay in doing so. That delay has allowed the respondents to proceed to incur, upon the behalf of the taxpayers of Albemarle County, a major portion of the support of said police force. Theretofore law enforcement in said county rested with the Sheriff's Department, the major financial support for which was borne by the Commonwealth of Virginia. Consequently, Albemarle's budget has increased substantially due to the creation of the police force. Funds expended upon its manpower cannot be retracted and transferred to the Sheriff's Department as the plaintiffs argue can be done with the equipment purchased for the police force. The prejudice to the respondents is substantial.

As for Count Two of the suit, it alleges the creation of a police force in 1988, which action allegedly required a referendum, and lacking such, said legislative act is

a nullity. Barely a year passed between said enactment and the filing of the suit attacking it. That delay is insufficient to invoke the bar of laches as to Count Two.

September 19, 1991

By JUDGE PAUL M. PEATROSS, JR.

This cause comes before the Court on Count Two of the Bill of Complaint filed herein after a hearing before the Court on September 17, 1991, at which evidence was presented in the form of sworn testimony and exhibits.

*Factual Findings*

In June of 1983, the Board of Supervisors of Albemarle County ("the Board") passed an ordinance creating the Albemarle County Police Force ("the Police Force"). Albemarle County Code § 10.1-1 (Plaintiff's Exhibit 1, 9-17-91). At that time, the Board lacked the funding to establish a full-blown police department since funding for a police department from the state requires that a police department be in existence for at least one year. (Defendant's Exhibit 2, 9-17-91, pp. 137, 156). For this reason, the Police Force began with a chief of police (who was also the sheriff), two newly-hired police officers, and three officers transferred from the sheriff's department. In addition, the Board provided that the Police Force would share the responsibility for law enforcement in Albemarle County with the sheriff's department.

The Board planned to have the Police Force assume all law enforcement responsibilities, leaving the sheriff's department to serve civil papers and oversee the court system, on July 1, 1984. (Defendant's Exhibit 2, p. 137). The Police Force has continued to provide, and still provides, law enforcement services up to the present time.

In March of 1988, the Board amended the ordinance to reflect its intent that the Police Force not be limited to any certain number of officers, and the board also changed the name from "The Albemarle County Police Force" to "The Albemarle County Police Department" ("the Police Department"). Albemarle County Code § 10.1-1, as amended (see Plaintiffs' Exhibit 2, 9-17-91). The 1988 amendment

to the original ordinance also deleted the provision that the Police Force would share responsibility for law enforcement with the sheriff's department, since that need had been extinguished with the availability of additional funds in July, 1984.

Plaintiffs' evidence at the hearing on September 17, 1991, attempted to show that the Police Force as constituted under the ordinance enacted in 1983 could not perform the duties required under § 14.1-84.2(L) of the Code of Virginia of 1950, as amended. Specifically, plaintiffs' witness, Sheriff Terry Hawkins, who in 1984 was a commander with the police force, testified that the police force could not have one officer on duty at all times as required by the statute, which defined "police force" as established by the 1983 ordinance. His reasons were that constraints such as overtime pay, vacation, sick leave, etc., in addition to normal work hours would not permit such coverage.

Defendants countered with evidence from Guy Agnor, former County Executive of Albemarle County, that in his opinion a police chief and five deputies could meet the requirements of § 14.1-84.2(L) as employees of the County based on his knowledge of man hours required, etc. He testified he recommended to the Board the creation of the police force as shown in defendants' Exhibit 2. Mr. Agnor also testified that the County did not fall under the Fair Labor Standards Act in terms of minimum wage, etc., until 1987 or 1988.

Plaintiffs challenge the validity of the Police Department under a law which became effective in July, 1983, which requires a referendum for the establishment of a police force where one did not exist previously. Virginia Code § 15.1-131.6:1. Plaintiffs have been barred by the doctrine of laches from attacking the 1983 ordinance. (*See* letter opinion of Judge Pickford dated April 9, 1990, and the Interlocutory Order of the Court entered April 23, 1990.) Consequently, they now claim that the 1988 ordinance is a *de novo* act creating a new Police Department. The Board claims that the 1988 ordinance is merely an amendment and a re-enactment of the original ordinance, and therefore, no new Police Department has been created, and no referendum is necessary.

*Question Presented*

Was the amending ordinance in 1988 a *de novo* act by the Board, creating a new police department which should have been the subject of a referendum under Virginia Code Section 15.1-131.6:1?

*Discussion of Authority*

Judge Pickford's letter opinion of April 9, 1990, indicates as follows:

> Their [plaintiffs] legal attack upon the validity of that ordinance, however, did not occur until the instant suit was filed April 17, 1989. This delay of six years warranted an assumption that the plaintiffs had abandoned any claim disputing the legality of the ordinance. That they pursued a legislative remedy rather than litigation is evidence supportive thereof. Lack of authority to enact the ordinance or a defect in its enactment process are issues the plaintiffs could have asserted in 1983 or within a reasonable time thereafter. They are readily available to any prospective litigant who is aggrieved by a legislative act when he becomes aware of the act. Asserting those alleged deficiencies in 1989 is an unreasonable delay in doing so.

In an attempt to present evidence under Count Two of the Bill of Complaint, plaintiffs acknowledge that they are precluded from attacking the validity of the 1983 ordinance but maintain that the inability of the Board of Supervisors to maintain a police force as defined in § 14.1-84.2(L) of the Code of Virginia per the testimony of Sheriff Hawkins causes the 1983 ordinance to be invalid. As a result, they maintain that the 1988 ordinance created the police department, and it is invalid because the issue of the creation of a police department was not first submitted to a referendum under § 15.1-131.6:1 of the Code of Virginia of 1950, as amended.

Plaintiffs take the position that if they are allowed to attack the 1983 ordinance by showing that the County

did not put in place a police force within the definition of § 14.1-84.2(L) of the Code, that this failure causes the 1983 ordinance to be a nullity. Plaintiffs have presented no legal authority which support the position that if the County does not comply with the ordinance, the ordinance becomes null and void.

To the contrary, defendants advance the position that § 14.1-84.2(L) of the Code relates to "Law-Enforcement Expenditures," as the heading to Article 10, Chapter 1, of Title 14.1 indicates. Furthermore, they assert any failure to comply with § 14.1-84.2(L) would cause a possible termination of funding but would in no way effect the creation of a police force.

The rules of construction for statutes apply equally to ordinances. 62 C.J.S. *Municipal Corporations* § 442(a). "[T]he fundamental or primary rule for the construction of ordinances is to ascertain and give effect to the intention of the municipal legislative body." *Id.* at Section 442(f)(1). The minutes of the Board (see Defendant's Exhibit 2) indicate that the Board intended to establish a provisional police force in 1983 and then expand its numbers and responsibilities as money became available to do so. There is no indication that the Board meant to create a new and different police force in 1988; instead, the 1988 amendment appears to be a correction of the 1983 ordinance to bring it in line with the original intent of the board. In addition, an ordinance should be construed as valid wherever possible, even if this construction is not "the most obvious and natural construction." *Id.* at § 442(c).

The Court finds the case of *McMinn v. Anderson*, 189 Va. 289 (1949), applicable. "[W]hen a statute continues a former statute law, that law common to both acts dates from its first adoption, and only such provisions of the old act as are left out of the new one are gone, and only new provisions are new laws." *Id.* at 298.

### Ruling

It is clear from Judge Pickford's letter opinion of April 9, 1990, that any legal attack upon the validity of the 1983 ordinance is barred by laches. Therefore, the Court rules that any challenge to the 1983 ordinance,

even lack of compliance with § 14.1-84.2(L) os the Code, fails. Furthermore, the 1983 ordinance is presumed to be valid, and there has been no break or gap in the existence of the ordinance which has been shown up until the ordinance was amended and re-enacted on March 9, 1988. Therefore, the March 9, 1988, amendment did not as a matter of law constitute the establishment of a police force.

Even if the Court ruled that the 1983 ordinance was subject to attack under the reasoning advanced by plaintiffs that the Board of Supervisors had not complied with § 14.1-84.2(L) of the Code, the Court would rule that such noncompliance would not cause the 1983 amendment to become a nullity. Therefore, plaintiffs' claim would still fail that the 1988 enactment and amendment created a new police force.

In reviewing the evidence in this case, the Court is aware of the concern of the plaintiffs that a police force was created by the Board of Supervisors without submitting the issue to the people in the form of a referendum. Even though it appears that the action of the Board of Supervisors in 1983 was accomplished in order to avoid the new legislature going into effect on July 1, 1983, the Court simply finds no unlawful action by the Board of Supervisors for the reasons herein set out.